UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| GLENWOOD FARMS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Docket No. 09-cv-205-P-S ) |
| COZEN O' CONNOR, et al., | ) ) |
| Defendants. | ) ) |

**ORDER ON MOTION FOR PRELIMINARY INJUNCTION**

Before the Court is Plaintiff's Motion for Preliminary Injunction (Docket # 7). Therein, Plaintiff Glenwood Farms, Inc. seeks an injunction ordering Defendants to preserve certain documents and to produce those documents for *in camera* inspection. As explained herein, the Court DENIES the motion.

**I.   BACKGROUND**

This case arises from a prior related litigation before this Court, Glenwood Farms, Inc. v. Ivey, et al., D. Me. Docket No. 03-cv-217-P-S ("Glenwood I"). Thus, many of the parties here—Defendant law firms and attorneys, and Glenwood Farms, one of their former clients[1]—are not strangers to the Court. A brief factual and procedural history follows.

   **A.   Glenwood I**

Glenwood Farms retained Attorney Jan Schlichtmann, Attorney Thomas Sobol of Hagens Berman LLP, and Attorney Garve Ivey of Ivey & Ragsdale in the investigation and negotiation of claims against Nestlé Water, Inc. ("Nestlé"). These law firms and

---

[1] As described below, all Defendants except Cozen O'Connor and Kevin Berry previously represented Glenwood Farms.

attorneys (collectively, "the Lead Counsel Group") ultimately represented four competitors of Nestlé: Glenwood Farms, Carrabassett Spring Water Company, Inc. ("Carrabasset"), Vermont Pure Holdings, Ltd. ("Vermont Pure"), and Tear of the Clouds LLC ("Keeper Springs"). Defendants Berry and Cozen O'Connor were employed as Vermont Pure's independent counsel in connection with its retention of the Lead Counsel Group. The Lead Counsel Group simultaneously represented a putative class of consumers.

An attempted mediation with Nestlé occurred from February through June 2003. The mediation failed, according to Glenwood Farms, due to Defendants' sabotage. In essence, Glenwood Farms alleged that the attorneys stood to profit by derailing the Nestlé settlement and proceeding with the more lucrative consumer class action.

On August 21, 2003, Glenwood Farms and Carrabasett sued Sobol, Steven Berman, Hagens Berman LLP (collectively, "the Hagens Defendants"), Ivey, and Ivey & Ragsdale (collectively, "the Ivey Defendants") in this Court, alleging that they had conspired to further the interests of the consumer class at their expense, and had unlawfully undermined the mediation. (See Compl. (Docket # 1 in D. Me. Docket No. 03-cv-217-P-S).) Nearly three years later, a jury returned a verdict in favor of Glenwood Farms on all counts. (See Jury Verdict (Docket # 542 in D. Me. Docket No. 03-cv-217-P-S).) Shortly before the punitive damages phase of the trial, Glenwood Farms settled with the remaining Hagens Defendants.[2] A stipulation of dismissal with prejudice was filed on April 28, 2006.

---

[2] The Glenwood I plaintiffs had settled with the Ivey Defendants in June 2005.

### B.     Vermont Pure Litigation and Glenwood II

The fourth Nestlé competitor, Vermont Pure, then brought a similar action against Defendants in Suffolk County Superior Court in Massachusetts, captioned Vermont Pure v. Sobol, et al., C.A. No. 06-01403-BLS1 ("Vermont Pure").  Discovery commenced and the Hagens Defendants' counsel produced 12 boxes of documents to Vermont Pure. Glenwood Farms gained access to this production.  It now insists that eight e-mails and two memoranda were improperly withheld during Glenwood I, and that such information, had it been disclosed, would have materially affected the decision to settle Glenwood I.

In light of this newly discovered information, Glenwood Farms brought the instant action ("Glenwood II"), alleging that the e-mails and memoranda reveal the full extent of Defendants' conspiracy to derail the Nestlé settlement, particularly with respect to Berry's fraudulent conduct.  Plaintiff's Amended Complaint[3] requests a preliminary injunction requiring the preservation of documents as to all Defendants (Count 1); seeks a declaration that all Defendants conspired to and did engage in a fraud upon the Court during Glenwood I (Count 2); asserts that Berry and Cozen O'Connor committed fraud by failing to produce documents and by giving false testimony (Count 3), and conspired with the Glenwood I defendants to undermine the Nestlé mediation and settlement (Counts 4 through 9);[4] and demands punitive damages from Berry and Cozen O'Connor (Count 10).

---

[3] Plaintiff's Amended Complaint comprises a self-styled "equitable petition" as well as an independent civil complaint against Defendants Berry and Cozen. (See Pl.'s Reply to Defs.' Opp'n to Mot. for Preliminary Injunction (Docket # 31) at 1.)

[4] Specifically, Glenwood Farms alleges that Berry facilitated the conspiracy by fraudulently inducing Vermont Pure to terminate Schlichtmann, and falsely indicating that Vermont Pure had no objection to proceeding with the class action.  (See Am. Compl. (Docket # 6) ¶¶ 78, 82-85.)  Glenwood Farms alleges that Berry committed fraud by failing to produce certain documents in response to a deposition notice, and

As mentioned, Glenwood Farms asserts that the newly discovered evidence was contained in 12 boxes of documents produced by the Hagens Defendants during Vermont Pure discovery. In its Motion for Preliminary Injunction, Glenwood Farms asserts that an additional 14 boxes are being improperly shielded from disclosure in the Vermont Pure litigation, and asks the Court to preserve and inspect those materials, which, it asserts, are likely to contain concealed information relevant to the Glenwood II claims.

## II. STANDARD OF REVIEW

In determining a motion for a preliminary injunction, the Court must consider: "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiff[]; and (4) the effect, if any, on the public interest." Gonzalez-Droz v. Gonzalez Colon, No. 08-1437, 2009 WL 2184819, at *3 (1st Cir. July 23, 2009) (citation and internal punctuation omitted); see also Fed. R. Civ. P. 65(a). The Court's analysis typically focuses on the first two factors, and "irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief." Charlesbank Equity Fund II v. Blinds to Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004). "To demonstrate the prospect of future harm, a plaintiff must show more than that she has been injured. Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief [] if unaccompanied by any continuing, present adverse effects." Gonzalez-Droz, 2009 WL 2184819, at *3.

---

giving false testimony during a pre-trial deposition, via affidavit, and during trial. (See id. ¶¶ 108-115, 128.)

4

Because a preliminary injunction "is traditionally viewed as relief of an extraordinary nature," Francisco Sanchez v. Esso Standard Oil Co., 572 F.3d 1, ---- (1st Cir. 2009), "it should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Dobson v. Dunlap, 576 F. Supp. 2d 181, 188 (D. Me. 2008) (citation and internal punctuation omitted); see also Augusta News Co. v. News America Publ'g Inc., 750 F. Supp. 28, 31 (D. Me. 1990) (indicating that preliminary injunctions "must be used sparingly and only in cases where the need for extraordinary equitable relief is clear and plain").

## III.  DISCUSSION

Although the Court would typically assess each factor separately,[5] Plaintiff's failure to adduce any evidence regarding irreparable harm—indeed, its wholesale failure to address the familiar four-part framework—eliminates the need to do so here. In short, Glenwood Farms has not carried its burden of persuading the Court that "extraordinary and drastic" injunctive relief is warranted. Dobson, 576 F. Supp. 2d at 188.

First, Glenwood Farms' characterization of the recently disclosed information as previously concealed is, at best, contested. In support of its motion, Glenwood Farms has submitted the affidavit of Christopher Bartle, who was responsible for supervising the Glenwood I litigation for Keeper Springs. Based on his personal knowledge and familiarity with the production of documents in Glenwood I, Bartle avers that several of the documents recently produced in Vermont Pure were not disclosed to the Glenwood I plaintiffs.[6] In response, the Hagens Defendants submit the declaration of Attorney Peter DeTroy, who represented the Hagens Defendants in Glenwood I, and states the

---

[5] See, e.g., Waldron v. George Weston Bakeries, Inc., 575 F. Supp. 2d 271 (D. Me. 2008).

[6] (Aff. of Christopher H. Bartle (Docket # 7-2) ¶ 5.)

5

following: "It was my intention to produce all responsive e-mails, including those allegedly 'concealed' by the Hagens Defendants, and I believe that our office did produce these e-mails."[7]  Defendants unequivocally reject Glenwood Farms' allegation of concealment.

Of course, this is not to say that the relevant e-mails and memoranda may not ultimately support Glenwood Farms' factual claims.  They may.  But Glenwood Farms' inability to demonstrate that the information was improperly withheld during <u>Glenwood I</u> surely undermines the likelihood of its claim that the Defendants perpetrated a fraud on the court.

Next, the relevant 14 boxes are currently in the custody of the law firm of Esdaile, Barrett & Esdaile, which is representing the Hagens Defendants in <u>Vermont Pure</u>.  Attorney Catherine Ryan avers that documents have been produced or withheld in that case appropriately, on the basis of responsiveness, relevance, and attorney-client privilege.[8]  Moreover, during a recent telephone conference, the Court emphasized and Defendants acknowledged their professional obligations regarding document preservation.  In sum, Glenwood Farms has failed to demonstrate any potential for irreparable harm in the absence of its requested injunction.

Finally, the relevant 14 boxes have been withheld on the basis of responsiveness, relevance, and privilege in an unrelated Massachusetts state court case.  Glenwood Farms has not persuaded the Court of its ability to meaningfully inspect or evaluate documents that have been produced or withheld in an unfamiliar context.  Once the formal discovery

---

[7] (Decl. of Peter DeTroy (Docket # 24) ¶ 5.)

[8] (Decl. of Catherine A. Ryan (Docket # 24) ¶¶ 4-5.)

process commences in this case, the parties are free to circulate document requests as appropriate, and to call for the Court's attention as needed.

### IV. CONCLUSION

For the foregoing reasons, the Court ORDERS that Plaintiff's Motion for Preliminary Injunction (Docket # 7) is hereby DENIED.

SO ORDERED.

                                          /s/ George Z. Singal
                                          United States District Judge

Dated this 7th day of August, 2009.