## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| GLENWOOD FARMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 09-cv-205-P-S |
| | ) | |
| COZEN O'CONNOR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER ON MOTIONS TO DISMISS

Three years ago, Plaintiff Glenwood Farms, Inc. ("Glenwood") ended a hard-fought lawsuit in this Court by settling several claims against some of the Defendants to this action in exchange for unknown consideration. Now convinced that these Defendants procured that settlement by fraud upon it and the Court, Glenwood brings a new claim against them, and attempts to resurrect its settled claims by bringing them against two new Defendants. Before the Court are four motions to dismiss Glenwood's First Amended Complaint. Defendants raise multiple grounds for dismissal, including lack of personal jurisdiction, failure to state a claim upon which relief may be granted, the one-year limitation on a motion for relief from judgment based on allegations of fraud, and the affirmative defense of res judicata. As explained herein, the Court DISMISSES AS MOOT one of Defendants' motions and GRANTS the others.

## I.      BACKGROUND

### A.      The Parties and **Glenwood I**

Glenwood, a bottler and seller of Maine spring water headquartered in St. Albans, Maine, seeks compensatory and punitive damages, declaratory, injunctive, and other unspecified forms of equitable relief against seven Defendants, all of whom are either attorneys or law firms.

Glenwood's claims arise from events that occurred over six years ago and have already been the subject of extensive litigation in this Court.

In December 2002, Glenwood commenced an attorney/client relationship with two of the seven Defendants—Ivey & Ragsdale (the "Ivey Firm") and Hagens Berman Sobol Shapiro, LLP (the "Hagens Firm"). Three other Defendants—Garve Ivey, Thomas M. Sobol, and Steven W. Berman—are individuals affiliated with the Ivey and Hagens Firms. Glenwood retained these firms and non-party attorney Jan R. Schlichtmann (collectively, the "Lead Counsel Group") to investigate and negotiate claims Glenwood may have had against Nestlé Waters North America ("Nestlé"). Those potential claims involved Nestlé's alleged unfair and deceptive acts and practices in the manufacturing, sale, and marketing of "Poland Spring Natural Spring Water," a Nestlé product manufactured from sources in Maine.

The other two Defendants—Kevin F. Berry and his firm Cozen O'Connor P.C. (the "Cozen Firm")—represented another player in the bottled water industry, Vermont Pure Holdings, Ltd. ("Vermont Pure"). Vermont Pure retained the Lead Counsel Group for the same purposes Glenwood had. Two other companies, Carrabassett Spring Water Company, Inc. ("Carrabassett"), and Tear of the Clouds LLC ("Keeper Springs") also retained the Lead Counsel Group. Glenwood, Vermont Pure, Carrabassett, and Keeper Springs (collectively, the "Competitors"), thus allied themselves with the Lead Counsel Group to negotiate a settlement of their claims against Nestlé. Eventually, an individual named Lori Ehrlich joined them as the representative of a potential class of consumers holding similar claims.

As described in more detail below, the settlement negotiations with Nestlé failed. Glenwood, Carrabassett, and Keeper Springs filed suit in this Court alleging that the five members of the Lead Counsel Group who are Defendants in this action (Ivey, the Ivey Firm,

Sobol, Berman, and the Hagens Firm) breached their contractual and fiduciary duties, and committed malpractice and tortious interference with prospective advantageous relationships. Glenwood Farms, Inc. v. Ivey, No. 03-CV-217-P-S (D. Me. filed Aug. 21, 2003) (Glenwood I). Although Ivey and the Ivey Firm settled before trial, Sobol, Berman, and the Hagens Firm did not.[1]   The jury returned a verdict in plaintiffs' favor, awarding Glenwood $3,898,129.00 in compensatory damages.   (See Special Verdict Form for Plaintiff Glenwood Farms, Inc. (Glenwood I Docket # 542).)  Instead of presenting evidence on its remaining claim for punitive damages, Glenwood settled with Sobol, Berman, and the Hagens Firm.  Pursuant to Federal Rule of Civil Procedure 41(a), the parties filed a stipulation of dismissal on April 28, 2006, wherein they stipulated that the "action be dismissed with prejudice and without costs to any party." (Stipulation of Dismissal (Glenwood I Docket # 554).)   The Court took no further action in Glenwood I.

B.    **The Concealed Documents**

At some point after the verdict in Glenwood I, Vermont Pure filed an action in Suffolk County Superior Court in Massachusetts asserting similar claims against most of the Glenwood I defendants, Berry, and the Cozen Firm.   Vermont Pure, Inc. v. Sobol, No. 06-1814 (BLSI) (Mass. Super. Ct. Dec. 26, 2008) (Vermont Pure).  In late December 2006 and early January 2007, during discovery in Vermont Pure, the defendants therein produced to Vermont Pure certain documents (the "Concealed Documents") that Glenwood, having examined them, now contends should have been produced to it in Glenwood I.  Glenwood says that had it obtained the Concealed Documents before trial in Glenwood I, it would have joined Berry and the Cozen

---

[1] At various times during Glenwood I, Sobol, Berman, and the Hagens Firm, in support of their defenses, proffered testimony by Defendant Berry, who had personal knowledge of the facts surrounding the failed Nestlé negotiations from his representation of Vermont Pure.

Firm as defendants, its evidence of liability would have been stronger, and it would have tried its punitive damages claims.  (See First Am. Compl. (Docket # 6) ("Complaint") ¶¶ 122-28, 138.)

### C.      Glenwood's Current Claims

Glenwood says all seven Defendants intentionally concealed the Concealed Documents during Glenwood I.  For this and other reasons, Glenwood alleges that they all perpetrated fraud upon the Court, and asks the Court to craft an appropriate equitable remedy.  Glenwood also seeks compensatory and punitive damages from the two new Defendants, Berry and the Cozen Firm, whose alleged complicity in the tortious conduct at issue in Glenwood I Glenwood has only recently discovered.

Glenwood's Complaint is thus something of a hybrid.  As to all seven Defendants it is a so-called "equitable petition" for relief for alleged fraud upon the Court in Glenwood I.  The equitable petition is confined to Count II of the Complaint.  As to Berry and the Cozen Firm it is a civil action for equitable relief and compensatory and punitive damages for alleged tortious conduct.  These causes of action are confined to Counts III through X.  Finally, in Count I, Glenwood seeks a preliminary injunction against all Defendants requiring them to preserve all documents potentially relevant to either Glenwood I or this action.  Count I is no longer pending.[2]  All Defendants move to dismiss Glenwood's Complaint.

## II.      DISCUSSION

### A.      The Motion to Dismiss of Defendants Kevin Berry and Cozen O'Connor

Defendants Berry and the Cozen Firm (collectively, the "Cozen Defendants") move to dismiss Glenwood's Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil

---

[2] Soon after filing the Complaint, Glenwood moved for the same preliminary relief it seeks in Count I.  (Compare Mot. of the Pet'r, Glenwood Farms, Inc., for a Prelim. Inj. Preserving Evidence and for an Order Requiring Produc. of Said Evidence to the Court (Docket # 7), with Compl. ¶¶ 129-31.)  The Court denied the motion.  (See Order on Mot. for Prelim. Inj. (Docket # 40).)  By ruling that Glenwood is not entitled to preliminary injunctive relief, the Court effectively dismissed Count I.

Procedure 12(b)(2) and, specifically with respect to Count III, for failure to state a claim upon which relief can be granted.[3]   (See Mot. of Defs. Kevin F. Berry and Def. Cozen O'Connor P.C.'s to Dismiss Pursuant to FRCP Rules 12(b)(2), (5) and (6) (Docket # 28) ("Cozen Defs.' Mot. to Dismiss").)   Appearing to believe that Counts I and II do not state claims against them and observing that Count X is derivative of the substantive Counts III through IX, the Cozen Defendants do not address Counts I, II, or X.   (See id. at 1 n.1.)

### 1.   Motion to Dismiss Based on Personal Jurisdiction

#### a.   Legal Standard for Dismissal Pursuant to Rule 12(b)(2)

A motion to dismiss for lack of personal jurisdiction requires the plaintiff to demonstrate that the Court has personal jurisdiction over the defendant, or, in other words, "the power to require the [defendant] to obey its decrees." Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008) (internal quotation omitted).   A federal court exercising diversity jurisdiction is "the functional equivalent of a state court sitting in the forum state." Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994); see Fed. R. Civ. P. 4(k).   Therefore, the court must "find sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause." Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).   The First Circuit has recognized that where the forum's long-arm statute is "coextensive with the outer limits of due process," courts may focus on "whether the exercise of personal jurisdiction comports with federal constitutional standards." Id. at 1388.   Because Maine's long-arm statute is coextensive with the permissible exercise of personal jurisdiction under the Constitution, the constitutional inquiry controls.   See 14 M.R.S.A. § 704-A(1); Harlow v.

---

[3] The Cozen Defendants have abandoned their argument that Glenwood's Complaint should be dismissed for insufficient service pursuant to Federal Rule of Civil Procedure 12(b)(5).

Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005); Murphy v. Keenan, 667 A.2d 591, 593 (Me. 1995).

For the Court constitutionally to exercise personal jurisdiction, the defendants must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984) (alteration in original) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). There are two types of personal jurisdiction under the Due Process Clause—general and specific. General jurisdiction exists when "the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 25 (1st Cir. 2007) (internal quotation omitted). Specific jurisdiction exists when "the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Id. at 24 (internal quotation omitted). Neither party contends that general jurisdiction exists in this case. The Court therefore inquires into the existence of sufficient minimum contacts with the forum to support specific jurisdiction.

The minimum contacts analysis is broken into three categories—relatedness, purposeful availment, and reasonableness:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must . . . be reasonable.

Phillips v. Prairie Eye Ctr., 530 F.3d 22, 27 (1st Cir. 2008) (internal quotation omitted). "Questions of specific jurisdiction are always tied to the particular claims asserted." Phillips

Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999).  With respect to each claim asserted, jurisdiction is lacking "whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect."  United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992).  For that reason, "the defendant's in-state conduct must form an important, or at least material, element of proof in the plaintiff's case."  Id. (internal quotation and alteration omitted).

To determine whether Glenwood has met its burden of proving the existence of personal jurisdiction over the Cozen Defendants, the Court applies the prima facie method—the "most conventional" one.  Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995).  Accordingly, the Court "accept[s] the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing."  Id.  The Court does so "irrespective of whether the defendant disputes them, and . . . construe[s] them in the light most congenial to the plaintiff's jurisdictional claim."  Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007) (internal quotation omitted).  "[F]acts put forward by the defendant become part of the mix only to the extent that they are uncontradicted."  Id. at 48.

### b.    Minimum Contacts

### i.    Chronology of Claims and Contacts

In Counts IV through X, Glenwood pleads claims against the Cozen Defendants arising from the breakdown of the Nestlé mediation, which occurred in June 2003.[4]  In Count II, Glenwood alleges that the Cozen Defendants participated in a fraud upon the Court in Glenwood I, in which the Cozen Defendants were not involved until April 2004 at the earliest.  And, in

---

[4] Specifically, Glenwood pleads tortious interference with a prospective advantageous economic relationship in Count IV, civil conspiracy to commit tortious interference in Count V, aiding and abetting tortious interference in Count VI, aiding and abetting breach of fiduciary duty in Count VII, civil conspiracy in Count VIII, aiding and abetting in Count IX, and punitive damages in Count X.

Count III, Glenwood alleges the Cozen Defendants are liable for perpetrating an extended fraud beginning during the Nestlé mediation and continuing through March 29, 2006, the date of the settlement in Glenwood I.

That Glenwood's discrete causes of action accrued at different times over a three-year period makes the contacts analysis somewhat complicated. Notwithstanding Glenwood's contention that the Court may properly exercise jurisdiction over the Cozen Defendants with respect to Counts IV through X as long as it could do so with respect to Count III, the Court will bifurcate its contacts analysis into contacts related to the Nestlé mediation and contacts related to Glenwood I. See Harlow, 432 F.3d at 61 ("[I]n analyzing specific jurisdiction, contacts must generally be limited to those before and surrounding the accrual of the cause of action.").

> ii.  **Defendant Berry's Maine Contacts Related to Causes of Action Arising from the Nestlé Mediation**

Defendant Berry is admitted to practice law in Pennsylvania and New Jersey and at all relevant times was a shareholder of the Cozen Firm, a professional corporation.[5] The Cozen Firm is a law firm based in Philadelphia, Pennsylvania, with twenty-four offices located in the United States and abroad. The Cozen Firm has never had an office in Maine or New England. Vermont Pure, which is headquartered in Vermont, retained Berry as independent counsel in connection with Vermont Pure's retention of the Lead Counsel Group. Initially, Berry was to receive a referral fee in the amount of ten percent of Vermont Pure's recovery. Berry's primary contact at Vermont Pure was its CEO, Timothy Fallon, who was located, for the most part, in White Plains, New York. Berry's activities with respect to the Vermont Pure representation took place primarily in Philadelphia.

---

[5] The Cozen Defendants do not argue that Berry's jurisdictional contacts may not be imputed to the Cozen Firm, the professional corporation of which he was a shareholder. The Court, like Glenwood, therefore focuses almost entirely on Berry's contacts with Maine to support exercise of personal jurisdiction over both he and the Cozen Firm.

The Competitors and Ehrlich, as representative of the putative consumer class, agreed to mediate their dispute with Nestlé and hired Rodney Max as a mediator. The first mediation session occurred in New Jersey on February 28, 2003,[6] and subsequent sessions occurred in New Jersey, Massachusetts, and Connecticut. Berry attended these sessions on Vermont Pure's behalf. During this time, the parties to the mediation were subject to a standstill agreement pursuant to which they had each promised to refrain from commencing litigation in any court until the conclusion of the mediation process. Around May 30, in the belief that they could earn higher fees through litigation than mediation, Defendants, including Berry, allegedly conspired to sabotage the mediation by filing lawsuits against Nestlé in violation of the standstill agreement. As part of this conspiracy, the Ivey and Hagens Firms anticipated causing Glenwood to terminate them as its attorneys.

On June 4, the parties to the mediation negotiated a possible settlement of the Competitor's claims and Ehrlich's class claims, according to which settlement of the Competitor's claims was to be contingent on court approval of the class settlement. Ehrlich and all of the Competitors (except Vermont Pure, whose counsel, Berry, was unavailable) approved the proposal. The Competitors were able to obtain Vermont Pure's approval the next day, but by that time, Nestlé had indicated that the terms were unacceptable. On June 9, the Competitors, Ehrlich, the Lead Counsel Group, and Berry discussed the mediation, and Schlichtmann cautioned the group that Nestlé would abandon the process if any party breached the standstill agreement. The Competitors agreed they should give Nestlé more time to consider and approve the settlement.

Meanwhile, Sobol, Berman, and Ivey (i.e., members of the Lead Counsel Group and counsel to Glenwood) continued to conspire to sabotage the settlement by commencing litigation

---

[6] All events occurred in 2003 unless otherwise indicated.

on behalf of the consumer class. These machinations were conducted largely by email between the Hagens Firm in Massachusetts and the Ivey Firm in Alabama. The email messages included references to Berry's possible role in the scheme and the view that Glenwood would not be allowed to participate in future litigation because it had shown weakness, presumably by approving the June 4 settlement proposal. Berry's possible role became clearer on June 12, when Sobol, having had a change of heart based on Glenwood's advantageous presence in Maine, inquired whether Berry would assent to Glenwood's inclusion in the litigation, ostensibly giving Berry veto power over Glenwood's participation. Soon thereafter, Ivey sent a memorandum to unknown recipients suggesting that Berry knew that Ivey and Sobol intended to file a complaint in violation of the standstill agreement, and indicating that Berry wanted to know when the filing was to occur. Additional communications between Ivey, Sobol, and Berry suggest the existence of some form of quid pro quo, whereby Berry was to be awarded with "formal co-counseling arrangements" in exchange for his participation in sabotaging the Nestlé mediation. (Compl. ¶ 72.)

On June 16, the mediator advised all parties to the mediation that Nestlé had approved the June 4 settlement. In response, Ivey—representing that he was communicating Berry's position on behalf of Vermont Pure—objected to the settlement on the ground that it should not include as a prerequisite court approval of the consumer class settlement. Later that day, Berry convinced Vermont Pure to terminate its relationship with Schlichtmann (the only member of the Lead Counsel Group who favored settlement) by falsely telling Vermont Pure, who had approved the settlement, that Schlichtmann opposed it. Sobol, Ivey, and Berry then reallocated to themselves the fee Schlichtmann had stood to recover; Berry's fee increased from ten percent to sixteen percent.

At the same time, Sobol tried to convince the Competitors to abandon the mediation in favor of litigation.  However, Berry, at the instruction of Vermont Pure, told the mediator that Vermont Pure supported the settlement and that it was willing to wait for ninety days for a court to approve the proposed settlement of the consumer class claims.  At this point, the Competitors and Ehrlich were unified in their support of the proposed global settlement.  Then, the very next day, on June 18, Berry sent an email message to Sobol and Ivey representing that Vermont Pure had no objection to their initiation of class action litigation.  Vermont Pure had not authorized Berry to make this representation.  Upon learning that Sobol and Ivey intended to derail the settlement by breaching the standstill agreement, Glenwood sent them a letter explicitly stating its opposition to any litigation that would jeopardize the settlement.

Sobol and Ivey then made a final, unrealistic settlement offer to Nestlé that was accompanied by a threat to initiate litigation supported by a massive media campaign.  Nestlé rejected the offer.  Sobol and Ivey then initiated litigation and Glenwood's hope of executing a favorable settlement with Nestlé vanished.

### iii.    Berry's Maine Contacts Related to Causes of Action Arising from <u>Glenwood I</u>

On April 9, 2004, during an evidentiary hearing on the <u>Glenwood I</u> defendants' motion to dismiss for lack of personal jurisdiction, Berry testified in this Court on behalf of the defendants. Berry explained that he had worked directly with Nestlé's counsel, Jeffrey Garrod, to settle Vermont Pure's claims against Nestlé but, at some point after June 9, 2003, he came to the conclusion that Nestlé was not going to approve a settlement.  He also testified that Vermont Pure did not accept the terms of the settlement that the parties to the mediation negotiated on June 4, and that Vermont Pure was not included in the global settlement the mediator announced on June 16.

On June 1, 2005, pursuant to a notice of deposition duces tecum, Berry was deposed at the Cozen Firm's Philadelphia office.  Although he complied in part with the request for documents accompanying the notice, he failed to produce the Concealed Documents.  Berry then testified at his deposition that (1) he did not recall whether Sobol and Ivey had informed him when they would file the class action litigation, (2) he did not recall whether Sobol and Ivey ever asked his permission to file, (3) from June 4 to June 18, 2003, he had no information regarding how much Nestlé had been willing to pay Vermont Pure to settle its claims, and (4) Garrod had told him Nestlé had never approved any settlement proposal.

Two months after his deposition, on July 22, 2005, Berry filed a sworn affidavit in this Court in which he stated that (1) the Competitors knowingly waived any conflicts of interest that caused the Nestlé mediation to break down, (2) he did not believe the Glenwood I defendants violated any rules of professional conduct, (3) the parties to the Nestlé mediation had never agreed on any settlement, (4) Nestlé had never agreed to Vermont Pure's settlement demands, and (5) he advised Vermont Pure to proceed with litigation because he believed Nestlé had never intended to settle with Vermont Pure on acceptable terms.

Berry also testified in this Court at trial.  On that occasion, consistent with his previous sworn testimony, he explained that as of June 19 and 20, 2003, there did not exist a settlement that was acceptable to Vermont Pure.  He also testified that he never had any discussions with Sobol or Ivey regarding his participation in their scheme to derail the mediation.

Finally, employing unknown means, Berry and the Cozen Firm supposedly undertook to hide from Glenwood for almost two years the Concealed Documents, which Cozen initially received from the Hagens Firm under "unclear" circumstances, perhaps while Glenwood I was pending.  (Compl. ¶ 128.)

12

### iv. Berry's Maine Contacts in Relation to Glenwood's Claims—an Overview

As the above recital makes plain, Glenwood does not allege that Berry was ever present in Maine before he testified in <u>Glenwood I</u> on April 9, 2004. Glenwood also does not allege that Berry owed Glenwood or any other Maine party any fiduciary or contractual duty. Moreover, Glenwood makes no claim that Berry communicated directly with Glenwood within Maine or otherwise until he testified in <u>Glenwood I</u>.

Instead, Glenwood offers two means of avoiding the potentially fatal consequence of Berry's lack of Maine contacts during the Nestlé mediation (out of which the claims pleaded in Counts IV through X arose). First, Glenwood appears to assert that jurisdiction with respect to the claims in Counts IV through X is proper based on the in-state effects of Berry's allegedly tortious out-of-state conduct during the Nestlé mediation. (<u>See</u> Opp'n of Glenwood Farms, Inc., to the Mot. to Dismiss of the Defs. Kevin Berry and Cozen O'Connor (Docket # 44) at 6.) Second, Glenwood advocates that the Court analyze Berry's <u>Glenwood I</u> contacts, determine jurisdiction exists with respect to the claim in Count III, which arose in part from those contacts, and then exercise pendent personal jurisdiction with respect to the claims in Counts IV through X. (<u>See</u> id. at 12.) The Court addresses these alternatives in turn.

### (a). Analysis of the Nestlé Mediation Contacts

Glenwood's most concise statement of an independent basis for jurisdiction over the Cozen Defendants with respect to Counts IV through X is that "Berry, knowing of the duty owed Glenwood by Sobol and Ivey as well as the likely consequences of his own actions, willingly pursued [their] common scheme, actively participated in it, and ratified and adopted the acts of Sobol and Ivey for his own benefit." (Opp'n of Glenwood Farms, Inc., to the Mot. to Dismiss of the Defs. Kevin Berry and Cozen O'Connor (Docket # 44) at 6.)

Construed in the light most favorable to Glenwood, these allegations support the following theory of personal jurisdiction:  Sobol and Ivey were subject to personal jurisdiction in Maine for their conduct during the Nestlé mediation, which injured Glenwood, who was then their client.  See Glenwood Farms Inc. v. Ivey, 335 F. Supp. 2d 133, 143 (D. Me. 2004).  Berry, as co-conspirator and aider and abettor, played an instrumental role in Sobol and Ivey's injury of Glenwood by (1) assisting them in their breaches of fiduciary and contractual duties they owed Glenwood, and (2) contributing to their tortious conduct, which Sobol and Ivey directed toward Glenwood.   Berry also harmed Glenwood independently by tortiously interfering with Glenwood's settlement of its claims against Nestlé.  Therefore, Berry and the Cozen Firm are subject to personal jurisdiction for all claims arising from the Nestlé mediation, notwithstanding the fact that Berry's first relevant contact with Maine occurred over nine months after the mediation broke down.

Maine's long-arm statute provides for the exercise of personal jurisdiction over any person who, whether personally or through an agent, "[does] or caus[es] a tortious act to be done, or caus[es] the consequences of a tortious act to occur within [Maine]."  14 M.R.S.A. § 704-A(2)(B) (2003).   Accordingly, in certain circumstances, the occurrence in Maine of consequences of tortious conduct can support the exercise of specific jurisdiction under Maine law.  However, it is well-settled that the "commission outside the forum state of an act that has consequences in the forum state is by itself an insufficient contact where all the events necessary to give rise to a tort claim occurred outside the forum state."  Murphy v. Keenan, 667 A.2d 591, 595 (Me. 1995) (internal quotation omitted) (applying 14 M.R.S.A. § 704-A(2)(B)).  Alternatively, where it cannot be said that the non-resident defendant "'intentionally directed' its conduct toward a Maine resident," Bickford v. Onslow Mem'l Hosp. Found., Inc., 2004 ME 111,

14

¶ 13, 855 A.2d 1150, 1156 (quoting Calder v. Jones, 465 U.S. 783, 790, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)), the consequences in Maine of a tortious act committed outside Maine are mere factors "to be considered in light of the relevant facts that apply to the minimum contacts analysis." Murphy, 667 A.2d at 595; accord Harlow, 432 F.3d at 61-62; Noonan v. Winston Co., 135 F.3d 85, 90 (1st Cir. 1998).

Glenwood's claims fail under either rubric. The only well-pleaded act that could conceivably expose Berry to liability for tortious interference was his unauthorized transmission of the email to Sobol and Ivey falsely representing that Vermont Pure had no objection to their initiation of class action litigation. This email caused Sobol and Ivey to file the class action suit in violation of the standstill agreement, which in turn caused Nestlé to refuse to settle Glenwood's claims.[7] At this point the tortious interference was complete, see Currie v. Indus. Sec., Inc., 2007 ME 12, ¶ 31, 915 A.2d 400, 408, and Glenwood has not alleged, much less shown, that any of these events occurred in Maine. Cf. Murphy, 667 A.2d at 594-95. The same analysis applies to the allegations that Berry is liable alongside Sobol and Ivey as either an aider and abettor or co-conspirator in their tortious interference or breaches of duty—his activities bore no relation to Maine whatsoever.[8] Likewise, although Glenwood alleges facts tending to

---

[7] The Court resolves all thorny issues of proximate cause in Glenwood's favor. Similarly, although it is far from clear, the Court assumes that Berry's false representation of Vermont Pure's position with respect to the class action satisfies the elements of tortious interference by fraud (there being no mention of intimidation). See Sherbert v. Remmel, 2006 ME 116, ¶ 4 n.3, 908 A.2d 622, 623 (requiring a plaintiff alleging tortious interference by fraud to prove all elements of common law fraud).

[8] Glenwood explicitly disclaims personal jurisdiction over the Cozen Defendants pursuant to the so-called "conspiracy theory" of personal jurisdiction, "'whereby jurisdiction can be obtained over nonresident defendants based upon the jurisdictional contacts of co-conspirators.'" (Opp'n of Glenwood Farms, Inc., to the Mot. to Dismiss of the Defs. Kevin Berry and Cozen O'Connor (Docket # 44) at 12 (quoting In re New Motor Vehicles Canadian Exp. Antitrust Litig., 307 F. Supp. 2d 145, 158 (D. Me. 2004)).) Glenwood explains that such a theory conceivably applies only where the complaint lacks concrete allegations that the nonresident defendant caused tortious injury by an act or omission in the forum state. (Id.) It contends that the Complaint in this case does not suffer from this lack of concrete allegations. The Court need not investigate, therefore, whether Maine's long-arm statute or the Fourteenth Amendment allows it to exercise personal jurisdiction over a non-resident defendant based on allegations that he conspired with or aided and abetted a tortfeasor who is subject to its jurisdiction. See Glaros v. Perse, 628

show that Berry directed his conduct towards his own client Vermont Pure, the record lacks any assertion that he directed his conduct towards Glenwood or caused the consequences of his acts to occur within Maine.

"The Due Process Clause requires fair warning as to where individuals' conduct will subject them to suit, and for purposes of specific jurisdiction, 'this fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" Harlow, 432 F.3d at 62 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). Glenwood has failed to convince the Court that it would be consistent with these principles to exercise personal jurisdiction over the Cozen Defendants with respect to the claims in Counts IV through X, which arise solely from Berry's conduct during the Nestlé mediation.

### (b).    Analysis of the <u>Glenwood I</u> Contacts

Glenwood's alternative theory of personal jurisdiction with respect to the claims in Counts IV through X contemplates that the Court will exercise discretionary pendent personal jurisdiction over those claims deploying Count III, which is based in part on Berry's Glenwood I contacts, as the anchor count. In response, the Cozen Defendants point out that in the event the Court grants their motion to dismiss Count III for failure to state a claim upon which relief may be granted, the Court could not exercise pendent personal jurisdiction over Counts IV through X. The Court agrees. Cf. In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 16 n.14 (1st Cir. 2008); United States v. Botefuhr, 309 F.3d 1263, 1272-74 (10th Cir. 2002); Olin Corp. v. Fisons PLC, 47 F. Supp. 2d 151, 155 (D. Mass. 1999). However, because the Court

F.2d 679, 681-82 (1st Cir. 1980) (observing that some courts have recognized the conspiracy theory of jurisdiction and outlining the circumstances in which those courts have exercised it).

would lack the power to dismiss Count III for failure to state a claim without jurisdiction over the defendants, the Court analyzes the jurisdictional issue first.  See Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963).

Glenwood's overarching fraud claim, pleaded in Count III, arises from conduct that occurred during both the Nestlé mediation and Glenwood I.  Glenwood appears to believe that its argument for personal jurisdiction with respect to Count III is stronger if the Court aggregates all of Berry's contacts during these two distinct periods.  However, having already determined that the Nestlé mediation contacts are constitutionally insufficient, the Court is reluctant (in this specific jurisdiction case) to indulge in an exercise that suggests the whole may sometimes be greater than its parts.  Glenwood's showing of personal jurisdiction with respect to Count III is thus confined to Berry's alleged conduct during Glenwood I.

Berry testified in this Court on April 9, 2004, filed an affidavit in this Court on July 22, 2005, and then testified here again on March 16, 2006.  These three isolated events are the extent of his contacts with Maine during Glenwood I.  Glenwood alleges that on these occasions Berry made a number of false statements, described in detail above.  Glenwood also alleges that Berry offered substantially the same testimony at his deposition in Philadelphia on June 1, 2005, where he wrongfully failed to disclose the Concealed Documents.

The Cozen Defendants argue "it is both unwise, and a violation of the principles of fundamental fairness" to exercise personal jurisdiction over Berry based on Glenwood's allegations that he testified falsely in this Court.  (Cozen Defs.' Mot. to Dismiss at 14.)  They say that by voluntarily testifying, Berry did not "invoke[] any rights or protections granted by the laws of Maine," and that a contrary rule would discourage witnesses from testifying at trials in Maine.  (Id.)  Because this policy argument appears to concede that the fraud claim is sufficiently

related to Berry's allegedly false testimony, the Court considers whether Berry's testimony represents "a purposeful availment of the privilege of conducting activities in the forum state," which inquiry "involves both voluntariness and foreseeability." Phillips v. Prairie Eye Ctr., 530 F.3d 22, 27-28 (1st Cir. 2008) (internal quotation omitted).

The Cozen Defendants also concede Berry's testimony was voluntary. (See Reply Mem. in Supp. of Cozen Defs.' Mot. to Dismiss (Docket # 47) at 4.) All that remains, before determining whether exercise of personal jurisdiction would be reasonable, is the foreseeability requirement. Berry's allegedly false testimony must be of a nature that he could "reasonably anticipate being haled into court" in Maine. Phillips, 530 F.3d at 28 (internal quotation omitted). The Court is confident this requirement is satisfied. Berry voluntarily appeared and testified under oath on the defendants' behalf in Glenwood I. It is not unforeseeable that he may have to return to defend himself. After all, a witness who knowingly makes a false material declaration under oath in any proceeding before any court of the United States is subject to criminal liability. See 18 U.S.C. § 1623(a). Moreover, there exists a statute in Maine that provides a litigant harmed by witness perjury a right of action against the adverse party or the witness himself. See 14 M.R.S.A. § 870. The Cozen Defendants' policy argument effectively ignores the existence of these laws. Additionally, this is not a case where personal jurisdiction rests merely on the fact of prior testimony. See Webber v. Michela, 633 F.2d 518, 519 (8th Cir. 1980) (per curiam) (determining personal jurisdiction over police officers was lacking in a § 1983 action where the officers' only contact with the forum was their unimpugned testimony in the plaintiff's previous criminal trial). Here, Glenwood has alleged that Berry's voluntary testimony was false, an allegation essential to its claim that it was damaged by his fraudulent conduct.

18

Having determined that it was foreseeable that Berry would have to return to Maine to defend himself against claims arising from his sworn testimony in <u>Glenwood I</u>, the Court takes the final step in the personal jurisdiction analysis: it must determine that the exercise of personal jurisdiction would be reasonable. The Court is guided in this inquiry by the Gestalt factors, which include

> the defendant's burden of appearing; the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and the shared interest of the several States in furthering fundamental substantive social policies.

<u>N. Laminate Sales, Inc. v. Davis</u>, 403 F.3d 14, 26 (1st Cir. 2005). The Court finds that exercise of personal jurisdiction over the Cozen Defendants with respect to Count III is reasonable and will comport with traditional notions of fair play and substantial justice. Although the Cozen Firm may not have any offices in New England, it has twenty-four offices located in the United States and abroad. The burden on a law firm this size to defend a tort claim in Maine is constitutionally insignificant. <u>See</u> <u>Sawtelle</u>, 70 F.3d at 1395; <u>Glenwood Farms Inc.</u>, 335 F. Supp. 2d at 143. The strength of Maine's interest is apparent; the Maine Legislature enacted 14 M.R.S.A. § 870 in the absence of a right to recover damages in a civil action for perjury at common law. <u>See</u> <u>Cole v. Chellis</u>, 119 A. 623, 623 (Me. 1923). Setting aside the contested applicability of the statute here, its passage is evidence of Maine's interest in adjudicating this type of dispute. Glenwood's interest clearly weighs in favor of exercising personal jurisdiction. Finally, both the interstate judicial system's interest and the several States' interest will be advanced by adjudicating according to applicable Maine law a claim brought by a Maine plaintiff for damages allegedly caused and suffered in Maine.

### c.      Conclusion—Personal Jurisdiction over the Cozen Defendants

The Court therefore concludes that it is fair and appropriate to exercise personal jurisdiction over the Cozen Defendants with respect to Glenwood's fraud claim in Count III based on Berry's voluntary proffer of allegedly false testimony in Glenwood I.  See Khorrami v. Rolince, 493 F. Supp. 2d 1061, 1072 (N.D. Ill. 2007).  Whether Count III states a claim upon which relief can be granted is another matter.

### 2.      Motion to Dismiss for Failure to State a Claim

### a.      Legal Standard for Dismissal Pursuant to Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the "legal sufficiency" of a complaint.  Gomes v. Univ. of Me. Sys., 304 F. Supp. 2d 117, 120 (D. Me. 2004).  The general rules of pleading require "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This short and plain statement need only "give the defendant fair notice of what the claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal quotation and alteration omitted).  However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (internal quotation omitted).

The Court must accept as true all well-pleaded factual allegations in the Complaint and draw all reasonable inferences in Glenwood's favor.  Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).  In distinguishing sufficient from insufficient pleadings, "a

context-specific task," the Court must "draw on its judicial experience and common sense."

Ashcroft, 129 S. Ct. at 1950.

### b.      The Gravamen of Count III

Glenwood alleges that the Cozen Defendants knowingly misrepresented and omitted

material facts during the Nestlé mediation and continued to do so through the date of the

settlement in Glenwood I.  Glenwood says it justifiably relied on these misrepresentations and

omissions, just as the Cozen Defendants intended.  Further, Glenwood says it relied

> to its damage including, without limitation, not asserting claims against other
> defendants, namely Berry and Cozen and O'Connor, in [Glenwood I]; not
> presenting the true and full nature of the unlawful action taken by all Defendants;
> not knowing the true and full nature and value of the damages to which Glenwood
> was entitled, and signing the settlement release.

(Compl. ¶ 138.)   Glenwood states that it "sustained damages" as a result of the Cozen

Defendants' conduct, and requests that the Court "exercise its inherent equitable power to . . .

craft[] an equitable remedy" against the Cozen Defendants, jointly and severally.[9]  (Id.)

To determine whether Count III states a claim upon which relief can be granted, the

Court must first determine whether it states a single claim or multiple claims.  In its argument on

pendent personal jurisdiction, Glenwood contends that the Nestlé mediation and Glenwood I are

so related that it is fair to say that all claims arising from either episode arise out of the same

nucleus of operative fact and are therefore indistinct.  Glenwood is superficially correct, but only

insofar as the Nestlé mediation was the subject matter of Glenwood I.  Examination of the harms

Glenwood allegedly suffered as a result of the Cozen Defendants' purported fraud during these

---

[9] The Court has determined that this specific request for an equitable remedy is not inconsistent with Glenwood's
prayer for relief, wherein Glenwood requests generally "[t]hat judgment enter in favor of Plaintiff against
Defendants on Counts III through X of this Complaint, with the award of actual damages sustained by Glenwood."
(Compl. at 59.)  Consistent with these requests, the Court could conceivably enter judgment in favor of Glenwood
on Count III, grant appropriate equitable relief on that Count as requested, and award actual damages on the
remaining Counts.  The consequence of this determination is that the Court construes Count III as pleading an
equitable and not legal claim for relief.

episodes, however, belies Glenwood's contention that Count III includes only one claim for fraud. During the Nestlé mediation, Glenwood supposedly suffered compensable harm when Berry caused it to lose the Nestlé settlement. During Glenwood I, Glenwood supposedly suffered some harm—for which there exists only an unspecified equitable remedy—when Berry supposedly caused it not to sue him or his firm and to forgo its punitive damages claims against the other defendants. The Court is persuaded that these two claims for relief are separate and distinct and must be analyzed accordingly. Tackling that portion of Count III attributable to the Nestlé mediation first, the Court lacks personal jurisdiction over the Cozen Defendants with respect to it for the same reasons the Court lacks personal jurisdiction over the Cozen Defendants with respect to Counts IV through X.[10]

Glenwood is therefore left with that portion of Count III attributable to Berry's conduct in Glenwood I. Federal Rule of Civil Procedure 9(b) requires that a party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); see Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985) (instructing that the federal particularity requirement applies in diversity cases). Thus, a fraud plaintiff must specify "the time, place, and content of an alleged false representation." Greebel v. FTP Software, Inc., 194 F.3d 185, 193 (1st Cir. 1999) (internal quotation omitted). Glenwood has particularly alleged Berry's failure to produce at his deposition "those Concealed Documents to which he was a party"[11] and Berry's allegedly

---

[10] Alternatively, the Court is satisfied that the portion of Count III attributable to Berry's conduct during the Nestlé mediation fails to state a claim for fraud upon which relief can be granted. The Complaint is devoid of any allegation that Berry ever misrepresented a material fact on which Glenwood relied to its damage during the relevant period. And, in order for the Cozen Defendants to be liable for nondisclosure that amounts to misrepresentation, there must be some allegation of either active concealment or a duty to disclose. See Fitzgerald v. Gamester, 658 A.2d 1065, 1069 (Me. 1995). The Complaint contains none of these essential allegations.

[11] The Court notes that Glenwood can point to only three documents that fall into this category. In the first, Ivey asks for Berry's assent to Ivey's discussing with Glenwood its participation in future litigation. (See Compl. ¶ 71 & Ex. 7 (Docket # 6-8).) In the second, Sobol theorizes that Glenwood's participation may be beneficial to Berry's client, Vermont Pure. (Id.) And, in the third, Berry, on behalf of Vermont Pure and immediately before the Nestlé

perjurious testimony provided during <u>Glenwood I</u>.  (<u>See</u> Compl. ¶¶ 108, 110-15).  However, Glenwood has failed to allege that any of this conduct occurred before the deadline for amendment of the pleadings and joinder of parties in <u>Glenwood I</u>.  With respect to its allegation that Berry's fraud caused it to omit the Cozen Defendants as defendants in <u>Glenwood I</u>, Glenwood has failed to supply factual allegations that "raise a right to relief above the speculative level."  <u>Twombly</u>, 550 U.S. at 555.  Glenwood is therefore left with the claim that Berry's nondisclosure and false testimony caused it to "not present[] the true and full nature of the unlawful action taken by all Defendants; not know[] the true and full nature and value of the damages to which Glenwood was entitled, and sign[] the settlement release."  (Compl. ¶ 138.)

### c.      Applicability of the Civil Perjury Statute

The Cozen Defendants contend that because Glenwood's fraud claim depends in part upon allegations of perjury, it is properly analyzed under Maine's civil perjury statute.  The statute, 14 M.R.S.A. § 870,[12] establishes a cause of action for damages caused by witness perjury.  Noting that such a cause of action does not exist at common law, <u>see</u> <u>Cole v. Chellis</u>,

---

mediation broke down, represented to Ivey and Sobol on June 18, 2003 that Vermont Pure had no objection to their initiation of the class action litigation.  (<u>See</u> Compl. ¶ 83 & Ex. 13 (Docket # 6-14).)  It is evident from the Complaint and attached documents that Glenwood knew the contents of both the first and third emails.  Glenwood knew that Berry had veto power over whether Glenwood would be allowed to participate in future litigation.  (<u>See</u> Compl. ¶ 73 & Ex. 8 (Docket # 6-9).)  Glenwood also knew Berry had sent the June 18 email.  (<u>See</u> Compl. ¶ 85 & Ex. 14 (Docket # 6-15).)  Furthermore, Glenwood knew that Berry was involved in a quid pro quo involving "formal co-counseling arrangements" in exchange for giving Sobol and Ivey what they needed, and that four days after Berry proposed discussing the arrangements at his house in Palm Beach, Florida, he sent the June 18 email.  (<u>See</u> Compl. ¶ 72 & Ex. 8 (Docket # 6-9).)  It appears Glenwood had ample notice of Berry's role.  In light of this fact, its allegations of justifiable reliance on his nondisclosure of these three documents ring hollow, at best.

[12] The statute provides:

> When a judgment has been obtained against a party by the perjury of a witness introduced at the trial by the adverse party, the injured party may, within 3 years after such judgment or after final disposition of any motion for relief from the judgment, bring an action against such adverse party, or any perjured witness or confederate in the perjury, to recover the damages sustained by him by reason of such perjury; and the judgment in the former action is no bar thereto.

14 M.R.S.A. § 870.

119 A. 623, 623 (Me. 1923), the Cozen Defendants reason that if Glenwood's claim in Count III does not allege each of the statutory elements, the Court must dismiss it.

The elements of a civil perjury claim are "(1) a judgment obtained against a party, (2) by the perjury of the witness, and (3) introduced at the trial by the adverse party." Bean v. Cummings, 2008 ME 18, ¶ 9, 939 A.2d 676, 679. The Cozen Defendants argue that Count III fails to state a claim under the civil perjury statute because Glenwood has not alleged that a judgment was obtained against it in Glenwood I. The Court notes that Glenwood I terminated when the parties filed the stipulation of dismissal with prejudice after the jury returned its verdict. The Court need not decide whether such a stipulation of dismissal with prejudice constitutes a "judgment based on a judicial finding of fact" as the statute requires. Cole, 119 A. at 623. Even if the Court were to assume it does not, and hold that a judicial decree is required, the Court does not agree that it should dismiss Count III on this basis.[13]

To do so would effectively hold that the civil perjury statute preempts all common law fraud actions where some portion of the alleged misrepresentations were uttered by a witness at a trial. Where, as here, the plaintiff alleges that it was fraudulently induced to execute a settlement and release before entry of a judicial decree, it is only natural that the plaintiff is unable to point to a decree against it based on a judicial finding of fact. Yet a release, which ordinarily extinguishes a cause of action, "will nevertheless be set aside if shown to be the product of fraud, misrepresentation, or overreaching." Glynn v. Atl. Seaboard Corp., 1999 ME 53, ¶ 10, 728 A.2d 117, 119 (internal quotation omitted); see also Net 2 Press, Inc. v. 58 Dix Ave. Corp., 266 F. Supp. 2d 146, 171 (D. Me. 2003); Borden v. Sandy River & Rangeley Lakes R.R., 86 A. 242, 243 (Me. 1913). The Court is not convinced that the civil perjury statute requires a court to

_____

[13] The Court need not pause to consider the consequences of the opposite assumption because Glenwood has explicitly stated that the civil perjury statute "is inapplicable." (Opp'n of Glenwood Farms, Inc., to the Mot. to Dismiss of the Defs. Kevin Berry and Cozen O'Connor (Docket # 44) at 6.)

24

dismiss a fraud action because the plaintiff went to trial and settled, allegedly by fraudulent inducement, before entry of an adverse judgment.

### d.        Failure to State a Claim for Equitable Relief for Fraud

The Court turns to whether Count III states a claim for fraud according to the familiar standard:

> A person is liable for fraud if the person (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff.  When a plaintiff alleges a failure to disclose rising to the level of a misrepresentation, the plaintiff must prove either (1) active concealment of the truth, or (2) a specific relationship imposing on the defendant an affirmative duty to disclose.

Fitzgerald v. Gamester, 658 A.2d 1065, 1069 (Me. 1995) (internal quotation and citation omitted).  Under Maine law, a court tasked with determining whether a complaint states a claim for fraud must consider the harm the plaintiff allegedly suffered and the remedy plaintiff seeks. See Kuperman v. Eiras, 586 A.2d 1260, 1262 (Me. 1991) (recognizing that, whereas a fraud plaintiff seeking money damages must allege pecuniary loss, a plaintiff seeking the equitable remedy of contract rescission need not).  The damages Glenwood alleges are that (1) it did not know and did not present to the jury a complete picture of the extent and consequences of all Defendants' roles in sabotaging the Nestlé mediation, and (2) it settled and released its punitive damages claims against the Glenwood I defendants.  Notably, Glenwood does not argue the compensatory verdict in Glenwood I—on which the settlement was likely based—would have been higher had Berry not engaged in the allegedly tortious conduct.  Its first claim of damage is therefore illusory.  At best, its first claim is for some measure of compensation for amorphous psychic harm.  But, non-economic losses are unrecoverable in a fraud action.  See Jourdain v.

Dineen, 527 A.2d 1304, 1307 (Me. 1987).  Glenwood is left with the claim that it was damaged when it executed the settlement in reliance on Berry's nondisclosure and false testimony.

Glenwood has failed to state a claim upon which its requested (but unspecified) equitable relief can be granted.  To the extent Glenwood seeks in Count III to rescind the settlement with the Glenwood I defendants by suing the Cozen Defendants, Count III must be dismissed. "Settlement agreements are analyzed as contracts . . . ."  Muther v. Broad Cove Shore Ass'n, 2009 ME 37, ¶ 6, 968 A.2d 539, 541.  A party who alleges that a settlement and release was procured by fraud may pursue an action for rescission.  Glynn, 1999 ME 53, ¶ 10, 728 A.2d at 119.  "Rescission is an equitable remedy which seeks to return the parties to the positions they were in prior" to the settlement.  Haynes v. Jackson, 2000 ME 11, ¶ 7 n.3, 744 A.2d 1050, 1051. To complete the remedy, the plaintiff must restore to the defendant the consideration received in exchange for the release.  See Masters v. Van Wart, 134 A. 539, 542 (Me. 1926); Getchell v. Kirkby, 92 A. 1007, 1008 (Me. 1915).  These rules represent high hurdles for Glenwood. Elsewhere, Glenwood has indicated that it does not wish to reopen its settlement with the Hagens Defendants.  (See Opp'n of Glenwood Farms, Inc. to the Mot. to Dismiss of the Defs., Hagens Berman Sobol Shapiro LLC, Thomas M. Sobol and Steve W. Berman (Docket # 41) at 15.) Presumably, this is because it does not wish to return to the Hagens Defendants what it received in consideration for its release of the punitive damages claims against them and, perhaps, forfeit its jury verdict, too.  Its implicit unwillingness to make restitution renders it an extremely unlikely candidate for the equitable remedy of rescission.

Alternatively, to the extent Glenwood seeks in Count III a money judgment equivalent to the value of its released, unliquidated punitive damages claims against the Glenwood I defendants, it must be dismissed.  First, because such a restitutionary measure of damages is

based on the concept of unjust enrichment, see Rosenthal v. Rosenthal, 543 A.2d 348, 355 (Me. 1988), Glenwood's attempt to recover it from the Cozen Defendants must fail.  Glenwood does not allege any facts that the Cozen Defendants, who were strangers to the settlement and release, were unjustly enriched by a difference in value between the settlement amount and the released punitive damages claims.

In addition, such an award—equivalent to punishing the Cozen Defendants for the Glenwood I defendants' conduct—would violate two related rules governing punitive damages in Maine.  First, "punitive damages may only be awarded in situations when the fact-finder has also awarded compensatory damages."  Rand v. Bath Iron Works Corp., 2003 ME 122, ¶ 15, 832 A.2d 771, 775.  Given the Court's disposition of the remainder of the Cozen Defendants' motion, there is no independent basis upon which the fact-finder in this case could award compensatory damages against the Cozen Defendants.  Second, because "deterrence of the tortfeasor is 'the proper justification' for an award of punitive damages," awarding them against a person other than the wrongdoer "can serve no deterrent function."  Braley v. Berkshire Mut. Ins. Co., 440 A.2d 359, 362 (Me. 1982) (emphasis in original) (quoting Foss v. Me. Tpk. Auth., 309 A.2d 339, 345 (Me. 1979)).  Of course, the Court could invent and indulge in the fiction that Glenwood's released punitive damages claim against the Glenwood I defendants has transformed into a claim for compensatory damages against the Cozen Defendants.  However, Glenwood has offered no authority for this proposition, and the Court is reluctant to hold that Glenwood can alter the character of its released claims for punitive damages by resurrecting them against new defendants.  It will not, therefore, allow Glenwood to maintain a cause of action for punitive damages against the Cozen Defendants, who cannot be held liable in this Court for the underlying harm for which Glenwood has already been compensated in full.

Finally, in an ordinary action for damages for fraud, provided the plaintiff has alleged pecuniary loss, see Jourdain, 527 A.2d at 1308, the difficulty of determining the extent of that loss is no reason for dismissal.  See Buzzell v. Cousens, 155 A. 736, 737 (Me. 1931).  Whether an analogous principle should apply in a case like this is unclear (i.e., provided the plaintiff alleges that liability on the released claim for punitive damages has been established, uncertainty as to its value is no reason for dismissal).  In any event, Glenwood cannot allege the Glenwood I defendants' liability for punitive damages has been established.  The merits of the Glenwood I defendants' legal arguments against such damages were never tested.  (See Order on Defs.' Mot. for J. as a Matter of Law on Punitive Damages Claims (Glenwood I Docket # 546) (reserving ruling on legal arguments pending presentation of relevant evidence.)  In light of the foregoing, where it is a matter of pure speculation whether the jury would have awarded punitive damages in Glenwood I and whether the Court would have set aside such an award, dismissal appears the only appropriate course.

### e.    Conclusion—Motion to Dismiss Count III for Failure to State a Claim

The Court concludes that Count III fails to state a claim upon which any equitable relief may be granted, as Glenwood has requested.  Accordingly, Count III cannot serve as the anchor for the exercise of pendent personal jurisdiction over the Cozen Defendants with respect to Counts IV through X.  Cf. In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d at 16 n.14; Botefuhr, 309 F.3d at 1272-74; Olin Corp., 47 F. Supp. 2d at 155.

### 3.    Conclusion—Motion to Dismiss of Defendants Kevin Berry and Cozen O'Connor

The Court therefore GRANTS, pursuant to Rule 12(b)(2) and (6) of the Federal Rules of Civil Procedure, Motion of Defendants Kevin F. Berry and Defendant Cozen O'Connor P.C.'s to Dismiss Pursuant to FRCP Rules 12(b)(2), (5) and (6) (Docket # 28), and DISMISSES WITH

PREJUDICE Count III for failure to state a claim upon which relief can be granted, and DISMISSES WITHOUT PREJUDICE Counts IV through X for lack of personal jurisdiction.

### B. The Motion to Dismiss of Defendants Steve Berman, Thomas Sobol, and the Hagens Firm Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Defendants Berman, Sobol, and the Hagens Firm (collectively, the "Hagens Defendants") move to dismiss Glenwood's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (See Mot. to Dismiss of the Defs., Hagens Berman Sobol Shapiro LLC, Thomas M. Sobol and Steve W. Berman (Docket # 23) (Hagens Defs.' Mot.).)  The Hagens Defendants contend that Glenwood's claims are barred by the doctrine of res judicata and, in the alternative, fail to state a claim for fraud upon the Court pursuant to Federal Rule of Civil Procedure 60(b).[14]

#### 1. Res Judicata

The Hagens Defendants construe Count II of Glenwood's Complaint, the so-called equitable petition for fraud upon the Court, merely to restate Glenwood's Glenwood I claims, refreshed with allegedly unknown facts culled from the Concealed Documents.  Arguing that revelation of the Concealed Documents cannot possibly form the basis of a new cause of action, but instead can only provide more evidence relevant to the Glenwood I claims, the Hagens Defendants conclude that the stipulation of dismissal with prejudice in Glenwood I bars this action.[15]  In response, Glenwood maintains that the focus of Count II is whether the Defendants

---

[14] Some courts have observed that the affirmative defense of res judicata, see Fed. R. Civ. P. 8(c)(1), may not be raised in a motion to dismiss.  E.g., Test Masters Educ. Servs. Inc. v. Singh, 428 F.3d 559, 570 n.2 (5th Cir. 2005). Although the First Circuit appears once to have held this technical view, see Cardillo v. Zyla, 486 F.2d 473, 475 n.1 (1st Cir. 1973), recent cases demonstrate that a res judicata defense may be raised in a motion to dismiss and the court may consider the record in the original action without converting the motion into one for summary judgment. See Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir. 2008).  There is no doubt that Rule 12(b)(6) is the proper vehicle for testing the sufficiency of a fraud upon the court claim.  See, e.g., Herring v. United States, 424 F.3d 384, 389 (3d Cir. 2005) (affirming dismissal of a fraud upon the court claim pursuant to Rule 12(b)(6)); Gleason v. Jandrucko, 860 F.2d 556, 560 (2d Cir. 1988) (same).

[15] The Court expresses no opinion on the propriety of the Hagens Defendants' choice to move to dismiss on the ground of res judicata rather than release.

harmed the integrity of the judicial process by perpetrating a fraud upon the Court.  It contends that res judicata does not apply where a party invokes a court's inherent judicial powers to investigate and remedy a fraud perpetrated upon it.[16]

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  Allen v. McCurry, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980).  Federal principles of res judicata apply in determining the preclusive effect of a prior federal judgment on a subsequent federal action.  Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 37 (1st Cir. 1998).  The elements of a res judicata defense under federal law are "(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions."  Breneman v. United States ex rel. FAA, 381 F.3d 33, 38 (1st Cir. 2004) (internal quotation omitted).

Appearing to assume the stipulation of dismissal in Glenwood I satisfies the first element, the parties focus on the second—namely, whether the causes of action in Glenwood I and this case are sufficiently identical.  According to the transactional approach to this question, which the First Circuit adopted in Manego v. Orleans Bd. of Trade, 773 F.2d 1 (1st Cir. 1985), the necessary identity exists if both causes of action arise from facts that form "a common nucleus that is identifiable as a transaction or series of related transactions."  Herman v. Meiselman, 541 F.3d 59, 62 (1st Cir. 2008).  "Facts forming a common nucleus are those meeting the following

---

[16] Glenwood also advances the novel argument that res judicata, which bars only "causes of action," does not apply here because in its "equitable petition" Glenwood asserts no "cause of action" against the Hagens Defendants.  (See Opp'n of Glenwood Farms, Inc., to the Mot. to Dismiss of the Defs., Hagens Berman Sobol Shapiro LLC, Thomas M. Sobol and Steve W. Berman (Docket # 41) at 6.)  The Court does not agree.  Glenwood seeks sanctions, attorney fees, declaratory, and equitable relief against the Hagens Defendants in Count II.  Branding that Count an "equitable petition" does not shield Glenwood from basic principles of federal procedural law, including res judicata, which may require dismissal.

criteria: '(1) whether the facts are related in time, space, origin or motivation; (2) whether the facts form a convenient trial unit; and (3) whether treating the facts as a unit conforms to the parties' expectations.'" Id. at 62-63 (quoting Apparel Art Int'l, Inc. v. Amertex Enters. Ltd., 48 F.3d 576, 584 (1st Cir. 1995)).

In Glenwood I, Glenwood's claims against the Hagens Defendants arose from the disintegration of their attorney/client relationship during the summer of 2003 and the contemporaneous breakdown in settlement negotiations with Nestlé. Here, Glenwood seeks declaratory and equitable relief, including sanctions and attorney fees, against the Hagens Defendants for allegedly concealing the Concealed Documents during the Glenwood I litigation. The Court is not convinced that the lost Nestlé settlement and the Hagens Defendants' Glenwood I litigation conduct are sufficiently identical for res judicata purposes. Neither is the Court satisfied that Glenwood could have litigated its current claims in Glenwood I. After all, the stipulation of dismissal with prejudice was filed on April 28, 2006, and it appears Glenwood learned of the alleged concealment sometime after the production of the Concealed Documents—which occurred in December 2006 and January 2007. (See Compl. ¶ 120.) Accordingly, because they arise from different underlying facts, Glenwood's current claims were not available to litigate in Glenwood I and the stipulation of dismissal with prejudice therefore does not operate as a bar to the instant action.

### 2.    Federal Rule of Civil Procedure 60(b)

The Hagens Defendants' next argument for dismissal is based on Rule 60(b). They contend that Glenwood's allegations are "'at most the routine stuff'" of motions under Rule 60(b)(3) for relief from a final judgment for reasons of fraud, misrepresentation, or misconduct by an opposing party. (Hagens Defs.' Mot. at 11 (quoting United States v. 6 Fox St., 480 F.3d

31

38, 47 (1st Cir. 2007)).)  Because such Rule 60(b)(3) motions must be made within a year of judgment, <u>Roger Edwards, LLC v. Fiddes & Son Ltd.</u>, 427 F.3d 129, 132 (1st Cir. 2005), the Hagens Defendants say Glenwood's Complaint is untimely.

Glenwood's opposition considerably muddies the waters.  It states that it "does not submit its Petition under Rule 60 and does not seek through [its] Petition any action as it relates to the judgment entered in <u>Glenwood I</u>."  (Opp'n of Glenwood Farms, Inc. to the Mot. to Dismiss of the Defs., Hagens Berman Sobol Shapiro LLC, Thomas M. Sobol and Steve W. Berman (Docket # 41) at 15.)  Glenwood asserts its Complaint instead is meant to invoke the Court's inherent power to unearth fraud perpetrated upon it and to sanction those responsible (without disturbing the <u>Glenwood I</u> settlement).

It is uncontroversial that neither courts nor litigants are bound by labels affixed to post-judgment filings under Rule 60.  <u>See, e.g.</u>, <u>Cotto v. United States</u>, 993 F.2d 274, 278 (1st Cir. 1993) (re-characterizing a motion filed under Rule 60(b)(6) as an untimely motion under Rule 60(b)(1)); <u>Nev. VTN v. Gen. Ins. Co. of Am.</u>, 834 F.2d 770, 775 (9th Cir. 1987) (observing that motions under Rule 60(b) and independent actions under Rule 60(d)(1), the former "savings clause" of Rule 60(b), "commonly have been treated as interchangeable").  The Hagens Defendants would have the Court apply this principle, characterize Glenwood's Complaint as a Rule 60(b)(3) motion, and dismiss it as untimely.  However, Glenwood has explicitly eschewed the only type of relief that Rule 60 allows:  relief from judgment.  Under these circumstances, the Court determines that further analysis of the Complaint under Rule 60 is inappropriate.[17]

---

[17] Although it is true that Rule 60(d)(1) references fraud on the court as a ground for setting aside a judgment, the Rule leaves substantive determinations of fraud on the court to "established principles," which predated enactment of the Rule and "have heretofore been applied" to fraud on the court claims. <u>Geo. P. Reintjes Co. v. Riley Stoker Corp.</u>, 71 F.3d 44, 48 (1st Cir. 1995) (internal quotation and citation omitted).  The Court therefore follows the lead of the parties and applies these principles without distinguishing whether they are culled from cases vacating judgments, <u>Hazel-Atlas Glass Co. v. Hartford-Empire Co.</u>, 322 U.S. 238, 250, 64 S. Ct. 997, 88 L. Ed. 1250 (1944), or dismissing complaints, <u>Aoude v. Mobil Oil Corp.</u>, 892 F.2d 1115, 1122 (1st Cir. 1989), for fraud upon the court.

### 3.      Fraud upon the Court

The Hagens Defendants argue that Glenwood's Complaint falls short of stating a claim for fraud upon the Court.  They contend that Glenwood's allegations, fairly construed, amount to nothing more than objections to discovery abuses and perjury, none of which involved an "officer of the court," and are therefore insufficient to support an action for fraud upon the Court. Glenwood strongly disagrees that its allegations are insufficient.  It asserts that Defendants, acting as officers of the Court, "conspired to and did perpetrate an egregious fraud" upon the Court in <u>Glenwood I</u>, (Compl. ¶ 15), which was "specifically directed at influencing and corrupting the orders and judgments" of the Court.  (Opp'n of Glenwood Farms, Inc., to the Mot. to Dismiss of the Defs., Hagens Berman Sobol Shapiro LLC, Thomas M. Sobol and Steve W. Berman (Docket # 41) at 8.)

The Court recites the events, which occurred during <u>Glenwood I</u>, that Glenwood says amount to fraud upon the Court:

1.  On April 9, 2004, Berry testified in an allegedly false manner during an evidentiary hearing on personal jurisdiction.

2.  On January 11, 2005, the <u>Glenwood I</u> defendants represented through counsel that they had produced all documents relating to their representation of Glenwood in the Nestlé matter.

3.  On February 15 and March 16, 2005, respectively, Berman and Sobol offered evasive and equivocal deposition testimony regarding their discovery obligations.

4.  On March 30, 2005, the Hagens Firm answered an interrogatory stating that it had produced all documents in its possession regarding the Nestlé matter.

5.  On June 1, 2005, Berry failed to produce the Concealed Documents at his deposition.  Berry also gave deposition testimony regarding the Nestlé negotiations that was, allegedly, intentionally and materially false.  Berry then repeated these falsehoods in a sworn affidavit he filed with the Court in support of the Hagens Firm's motion for summary judgment.

6. On July 22, 2005, the Hagens Firm filed a motion for summary judgment on Glenwood's tort and punitive damages claims.

7. On February 17, 2006, the <u>Glenwood I</u> defendants opposed Glenwood's motion in limine to exclude references to the defendants' professional duties to other clients.

8. On March 16, 2006, Berry testified in an allegedly false manner during trial.

9. On March 22, 2006, the Hagens Defendants moved for judgment as a matter of law on punitive damages.

Glenwood takes the position that these acts of concealment and prevarication deprived the jury of material evidence and that another "direct consequence . . . was the fraudulent inducement of Glenwood's pre-damages hearing settlement agreement with [the Hagens Defendants]." (Compl. ¶ 125.)

Glenwood must surmount a "high bar" to obtain relief for fraud upon the court. <u>6 Fox St.</u>, 480 F.3d at 46. The First Circuit has explained that "the power of a court to set aside a judgment for fraud upon the court . . . [is a] traditional inherent power of a court to protect its own essential functioning and integrity. It is, however, a power rarely to be used." <u>Simon v. Navon</u>, 116 F.3d 1, 6 (1st Cir. 1997). As most recently defined, fraud upon the court is "'an unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter involving an officer of the court.'"[18] <u>6 Fox St.</u>, 480 F.3d at 47 (quoting <u>Roger Edwards LLC</u>, 427 F.3d at 133). A finding of fraud upon the court "'may be justified only by the most egregious misconduct directed to the court itself, and . . . it must be supported

---

[18] Glenwood appears to believe that a claim for fraud upon the court may succeed without the involvement of an officer of the court. (<u>See</u> Opp'n of Glenwood Farms, Inc., to the Mot. to Dismiss of the Defs., Hagens Berman Sobol Shapiro LLC, Thomas M. Sobol and Steve W. Berman (Docket # 41) at 10.) In support of this position, Glenwood cites the Ninth Circuit case of <u>Toscano v. Commissioner</u>, which defines fraud on the court as conduct which "does, or attempts to, defile the court itself, <u>or</u> is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." 441 F.2d 930, 933 (9th Cir. 1971) (emphasis added). To the extent <u>Toscano</u> does not require the involvement of an officer of the court, and binding First Circuit authority does, the Court declines to follow it.

by clear, unequivocal and convincing evidence.'" <u>United States v. Yeje-Cabrera</u>, 430 F.3d 1, 29 n.22 (1st Cir. 2005) (quoting <u>Herring v. United States</u>, 424 F.3d 384, 387 (3d Cir. 2005)).

Importantly, determinations of fraud upon the court must be reserved for "very unusual cases involving 'far more than an injury to a single litigant.'"  11 Charles A. Wright, Arthur R. Miller & Mary K. Kane, <u>Federal Practice and Procedure</u> § 2870, at 415 (2d ed. 1995) (quoting <u>Hazel-Atlas Glass Co. v. Hartford-Empire Co.</u>, 322 U.S. 238, 246, 64 S. Ct. 997, 88 L. Ed. 1250 (1944)).  "[P]erjury alone, absent allegation of involvement by an officer of the court[,]" is insufficient.  <u>Geo. P. Reintjes Co. v. Riley Stoker Corp.</u>, 71 F.3d 44, 49 (1st Cir. 1995) (citing <u>United States v. Throckmorton</u>, 98 U.S. 61, 66, 25 L. Ed. 93 (1878)).  Moreover, failure to disclose documents during pretrial discovery does not necessarily amount to fraud on the court. <u>See</u> <u>Anderson v. Beatrice Foods Co.</u>, 900 F.2d 388, 393-96 (1st Cir. 1990) (determining that although withholding material evidence may constitute deliberate discovery misconduct, "not every instance of such misconduct . . . sink[s] to the level of fraud on the court"); <u>accord</u> <u>Gleason v. Jandrucko</u>, 860 F.2d 556, 560 (2d Cir. 1988) ("[N]either perjury nor nondisclosure, by itself, amounts to anything more than fraud involving injury to a single litigant."); <u>H.K. Porter Co. v. Goodyear Tire & Rubber Co.</u>, 536 F.2d 1115, 1118 (6th Cir. 1976).

As an initial matter, the Court notes that Glenwood won a jury verdict in <u>Glenwood I</u> and settled the case in lieu of pursuing its claim for punitive damages.  Glenwood cannot, therefore, point to any successful scheme that defrauded the Court in fact.  If the Court were in the Third or Sixth Circuit, this would end the analysis.  <u>See</u> <u>Herring</u>, 424 F.3d at 386 (requiring that the court be deceived); <u>Workman v. Bell</u>, 245 F.3d 849, 852 (6th Cir. 2001) (same).  However, the First Circuit's formulation of the standard appears to allow for situations where a scheme to deceive the court exists, but is ultimately unsuccessful.  <u>See</u> <u>6 Fox St.</u>, 480 F.3d at 47 (characterizing as

fraud upon the court an unconscionable scheme, involving an officer of the court, "calculated" to deceive the court).  For example, in Aoude v. Mobil Oil Corp., the First Circuit deemed as "near-classic" fraud on the court a situation where the plaintiff's scheme to defraud was exposed during discovery.  892 F.2d 1115, 1116-18 (1st Cir. 1989).  In response to the plaintiff's argument that his conduct did not interfere with the district court's ability to render an impartial decision, the Aoude court explained that "[t]he failure of a party's corrupt plan does not immunize the defrauder from the consequences of his misconduct."  Id. at 1120.  Therefore, even though there is no doubt that the Glenwood I defendants failed to compromise the integrity of the Court, there appears to remain a possibility under Aoude that they must face the consequences of their alleged misconduct nonetheless.

Glenwood's allegations can be broken into three categories:  nondisclosure of relevant materials during discovery, perjured testimony and false affidavits, and submission of memoranda containing legal arguments not based in fact.  Glenwood offers no authority for its position that filing memoranda containing unsuccessful legal arguments based on facts ultimately inconsistent with a jury verdict constitutes fraud upon the court.  Glenwood is therefore left with its allegations of nondisclosure and perjury, which, as the above-cited authorities make plain, will not succeed absent some involvement by an "officer of the court." See 6 Fox St., 480 F.3d at 47.

Glenwood argues that its claim survives because it has alleged that the individual Glenwood I defendants and Berry, the alleged perpetrators of the fraudulent scheme, were officers of the court because they are attorneys.  The Hagens Defendants do not disagree that it is appropriate to refer to an attorney as an officer of the court under some circumstances.  However, they contend that mere bar membership in one jurisdiction is insufficient to render an attorney an

officer of the court for purposes of determining whether he has committed fraud upon a specific court in another jurisdiction.  The Court determines that to survive a motion to dismiss, a fraud upon the court claim premised on attorneys' misconduct must allege facts that the attorneys plausibly were subject to a duty of candor to the court adjudicating the suit in which they were involved.  Glenwood's claim does not, and therefore fails to state a claim upon which relief may be granted.  See Ashcroft, 129 S. Ct. at 1949.

An attorney's identity as an officer of the court has caused substantial confusion over time.  See generally Cammer v. United States, 350 U.S. 399, 404-05 & n.3, 76 S. Ct. 456, 100 L. Ed. 474 (1956).  The Supreme Court has observed that an attorney may function as an "officer of the court" under some circumstances, but not others.  See Imbler v. Pachtman, 424 U.S. 409, 430-31 & n.33, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976) (recognizing that at some stages of a criminal prosecution, the prosecutor functions as an administrator or investigative officer rather than as an officer of the court or advocate).  Although there are no clear means of determining whether an attorney was an officer of the court for purposes of deciding a motion to dismiss a claim for fraud upon the court, the Court is not without some guidance.  When the First Circuit adopted the officer of the court requirement, which it gleaned from Hazel-Atlas Glass, it focused specifically on the role of counsel to the party-plaintiff in the underlying litigation, describing the fraud as "'a deliberately planned and carefully executed scheme' by an attorney 'to defraud not only the Patent Office but the Circuit Court of Appeals.'"  Geo. P. Reintjes, 71 F.3d at 47 (quoting Hazel-Atlas Glass, 322 U.S. at 245-46).  Given the context in which the Reintjes court referred to "attorney" involvement, the Court is reluctant to join Glenwood in broadly interpreting "attorney" to include anyone with a bar membership, notwithstanding their role as a witness, party, or representative of a party.

The design of the adversary process distinguishes between attorneys appearing in these various capacities.  For example, an attorney appearing in court on behalf of a client owes the court a duty of candor that is paramount to his or her client's interests.  Unanue-Casal v. Unanue-Casal, 898 F.2d 839, 842 (1st Cir. 1990); see, e.g., Me. Bar R. 3.7 (then applicable to attorneys admitted in this District pursuant to D. Me. Loc. R. 83.3(d)).  The law imposes this duty of candor on an attorney appearing in a representative capacity to help the court and judicial system "function properly to achieve the just resolution of controversies."  Unanue-Casal, 898 F.2d at 842.  Of course, this duty is enforceable.  See In re Las Colinas Dev. Corp., 585 F.2d 7, 11 (1st Cir. 1978) ("[A]ttorneys at law, who have been admitted to practice, are officers of the court and subject to its control." (internal quotation omitted)); Sahyers v. Prugh, Holliday & Karatinos, P.L., 560 F.3d 1241, 1245 (11th Cir. 2009) (observing that a federal court's control over a lawyer who practices before it derives from the lawyer's role as an officer of the court (citing Theard v. United States, 354 U.S. 278, 77 S. Ct. 1274, 1 L. Ed. 2d 1342 (1957))).  One consequence of this duty, which is enforceable on attorneys appearing in a representative capacity, is that "a judge has the right, in most circumstances, to rely on their representations to him."  Theodore v. New Hampshire, 614 F.2d 817, 822 (1st Cir. 1980); Holloway v. Arkansas, 435 U.S. 475, 486, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978).  It follows that when they appear in a representative capacity, "attorneys are officers of the court, [and] their conduct, if dishonest, would constitute fraud on the court."  Pearson v. First NH Mortgage Corp., 200 F.3d 30, 38 (1st Cir. 1999) (internal quotation omitted).[19]

---

[19] This reasoning is consistent with appellate cases observing that an attorney's duty of candor runs to those courts where he or she is admitted to practice and allowed to appear in a representative capacity.  See Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1546 (11th Cir. 1993) ("All attorneys, as 'officers of the court,' owe duties of complete candor and primary loyalty to the court before which they practice."); accord In re Las Colinas Dev. Corp., 585 F.2d at 11; United States v. Dinitz, 538 F.2d 1214, 1219 (5th Cir. 1976); Jones v. Rivers, 338 F.2d 862, 873 (4th Cir. 1964); Gray v. Joseph J. Brunetti Constr. Co., 266 F.2d 809, 817 (3d Cir. 1959); De Parcq v. United States Dist. Court, 235 F.2d 692, 694 (8th Cir. 1956); Phipps v. Wilson, 186 F.2d 748, 751 (7th Cir. 1951).

A different result occurs where an attorney testifies as a fact witness or participates as a party. "The possibility of perjury, even concerted, is a common hazard of the adversary process with which litigants are equipped to deal through discovery and cross-examination." Geo. P. Reintjes, 71 F.3d at 49. The logical inference is that, whereas the involvement of an attorney in a representative capacity impairs the ordinarily adequate mechanisms of discovery and cross-examination, the involvement of attorneys as witnesses and parties does not. See Aoude, 892 F.2d at 1119; Cleveland Demolition Co. v. Azcon Scrap Corp., 827 F.2d 984, 986 (4th Cir. 1987) (distinguishing between witness perjury and "the involvement of an attorney, as an officer of the court, in a scheme to suborn perjury" (internal quotation omitted)); Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978) (distinguishing between a party's fabrication of evidence with and without collusion of counsel); Leeson v. Chernau, 734 S.W.2d 634, 637 (Tenn. Ct. App. 1987) (distinguishing between testimony given by an attorney as a party and an attorney in his capacity as an officer of the court).

Were Glenwood correct, the judgment in any case in which an attorney was a party or testified as a witness would forever be vulnerable to collateral attack merely upon the revelation of new evidence tending to show nondisclosure or perjury. Such a result would be strikingly inconsistent with the Supreme Court's instruction that actions to set aside a judgment for fraud on the court must "be reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata." United States v. Beggerly, 524 U.S. 38, 46, 118 S. Ct. 1862, 141 L. Ed. 2d 32 (1998) (quoting Hazel-Atlas Glass, 322 U.S. at 244).[20]

---

[20] The Court acknowledges that other courts have characterized as officers of the court individuals who have not appeared as counsel for a party in the ordinary sense. See, e.g., Herring, 424 F.3d at 390 (two attorneys who did not represent the United States in the underlying litigation, but made a formal military secrets privilege claim on behalf of the United States Air Force, were officers of the court for purposes of determining whether the United States had

### 4. Conclusion—Motion to Dismiss of Defendants Steve Berman, Thomas Sobol, and the Hagens Firm

Glenwood has failed to allege facts that demonstrate Defendants or anyone appearing on their behalf in a representative capacity both (1) engaged in fraudulent conduct and (2) plausibly owed the Court in Glenwood I—a proceeding in which Defendants appeared as witnesses or party-defendants—the enforceable duty of candor shared by all attorneys whom the Court has permitted to appear before it in a representative capacity.   The Court therefore GRANTS, pursuant to Federal Rule of Civil Procedure 12(b)(6), Motion to Dismiss of the Defendants, Hagens Berman Sobol Shapiro LLC, Thomas M. Sobol and Steve Berman (Docket # 23), and DISMISSES WITH PREJUDICE Count II for failure to state a claim upon which relief can be granted.  For the foregoing reasons, on which Glenwood had ample opportunity to be heard, the Court sua sponte DISMISSES WITH PREJUDICE Count II for failure to state a claim upon which relief can be granted against Defendants Kevin F. Berry and Cozen O'Connor P.C., who did not move to dismiss Count II.  See Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 7 (1st Cir. 2007).

### C. Motion to Dismiss of Defendant Steve Berman

Defendant Berman moves individually to dismiss Glenwood's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (See Mot. to Dismiss of the Def. Steve W. Berman (Docket # 22).)  He argues the factual allegations in the Complaint that refer specifically to him

---

committed fraud upon the court); Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128, 1131 (9th Cir. 1995) (general counsel and vice president of the defendant was an officer of the court in the underlying litigation based on his significant participation therein, even though he did not represent the defendant); Tri-Cran, Inc. v. Fallon (In re Tri-Cran, Inc.), 98 B.R. 609, 617 (Bankr. D. Mass. 1989) (debtor in possession is an officer of the court).  However, because Glenwood does not specifically argue that any of these exceptions applies, the Court need not address them in detail.  Additionally, although Glenwood may or may not be correct that Defendants are subject to discipline under whatever rules of professional conduct apply to them, Glenwood failed to convince the Court that every violation of such rules in previous litigation necessarily triggers a finding of fraud upon the court.  Thus, the professional disciplinary cases are inapposite.  (See Opp'n of Glenwood Farms, Inc., to the Mot. to Dismiss of the Defs., Hagens Berman Sobol Shapiro LLC, Thomas M. Sobol and Steve W. Berman (Docket # 41) at 8 n.7.)

are too few and far between to state a facially plausible claim for relief.  Because the Court dismisses the Complaint with respect to Berman as described above, the Court need not address his alternative arguments and DISMISSES AS MOOT Motion to Dismiss of the Defendant Steve W. Berman (Docket # 22).

> ### D.        Motion to Dismiss of Defendants Garve Ivey and the Ivey Firm

Defendants Ivey and the Ivey Firm (collectively, the "Ivey Defendants") also move to dismiss Glenwood's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (See Defs. Garve Ivey and Ivey & Ragsdale's Mot. to Dismiss (Docket # 25).)  They vehemently deny any participation in concealment of the Concealed Documents and otherwise incorporate and adopt the arguments the Hagens Defendants make in their motion to dismiss.  Because the Court grants the Hagens Defendants' motion, the Court GRANTS Defendants Garve Ivey and Ivey & Ragsdale's Motion to Dismiss (Docket # 25), and DISMISSES WITH PREJUDICE Count II for failure to state a claim upon which relief can be granted against Ivey and the Ivey Firm.

## III.      CONCLUSION

For the foregoing reasons, the Court ORDERS as follows with respect to Glenwood's First Amended Complaint (Docket # 6):

1. The Court DISMISSES WITH PREJUDICE Count I as to all Defendants for the reasons stated in the Court's Order on Motion for Preliminary Injunction (Docket # 40).

2. The Court DISMISSES AS MOOT Motion to Dismiss of the Defendant Steve W. Berman (Docket # 22).

3. The Court GRANTS Motion to Dismiss of the Defendants, Hagens Berman Sobol Shapiro LLC, Thomas M. Sobol and Steve W. Berman (Docket # 23), and

DISMISSES WITH PREJUDICE Count II for failure to state a claim upon which relief can be granted against the Hagens Defendants.

4. The Court GRANTS Defendants Garve Ivey and Ivey & Ragsdale's Motion to Dismiss (Docket # 25), and DISMISSES WITH PREJUDICE Count II for failure to state a claim upon which relief can be granted against the Ivey Defendants.

5. The Court GRANTS Motion of Defendants Kevin F. Berry and Defendant Cozen O'Connor P.C.'s to Dismiss Pursuant to FRCP Rules 12(b)(2), (5) and (6) (Docket # 28), and DISMISSES WITH PREJUDICE Count III for failure to state a claim upon which relief can be granted against the Cozen Defendants and DISMISSES WITHOUT PREJUDICE Counts IV through X for lack of personal jurisdiction over the Cozen Defendants.

6. The Court sua sponte DISMISSES WITH PREJUDICE Count II for failure to state a claim upon which relief can be granted against the Cozen Defendants.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 14th day of October, 2009.